UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STARR INDEMNITY AND LIABILITY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1640** |
| **UNION PACIFIC RAILROAD COMPANY** | **SECTION "B"(4)** |

## ORDER AND REASONS

Before the Court is the defendant's opposed motion to transfer venue. Rec. Doc. 7. For the following reasons,

**IT IS ORDERED** that the motion is **DENIED**.

I.   **FACTS AND PROCEDURAL HISTORY**

This case arises from an alleged negligent destruction and partial cargo loss by the defendant Union Pacific Railroad Company ("Union Pacific"). *See* Rec. Doc. 1-1. In March 2020, McIlhenny Company (the "shipper") contacted a freight forwarder to arrange for the shipment of 1,601 cases of Tabasco Sauce (the "cargo") to Japan. *Id.* The cargo was picked up from McIlhenny's facility in Avery Island, Louisiana, and transported to Union Pacific's facility in Avondale, Louisiana. *Id.* The cargo was sealed in container number 5142823 and arrived at Union Pacific in good condition with no damage noted. *Id.* Subsequently, Union Pacific replaced the original seal with a new seal bearing the number 4498109 and shipped the cargo by rail from its facility in Avondale to Long Beach, California. *Id.* The cargo was then shipped from

1

Long Beach, California, to Tokyo, Japan, via the oceangoing vessel the M/V ONE CONTRIBUTION. Rec. Doc. 1-1.

On or about April 5, 2020, the container arrived at its discharge point in Tokyo, Japan. *Id.* However, McIlhenny's customer refused to accept the shipment because the seal was tampered with and the cargo was damaged. *Id.* McIlhenny investigated this incident and discovered that while the cargo was in a Union Pacific storage area, the original seal had been replaced by Union Pacific with a new seal, and some of the cargo and packaging were damaged or missing. *Id.* McIlhenny filed an insurance claim on the damaged and missing cargo with its insurer Starr Indemnity and Liability Company (the "plaintiff" or "Starr"). *Id.* Starr paid McIlhenny $123,199.85 for the cargo. Rec. Doc. 1-1.

On or about July 22, 2021, Starr filed a subrogation suit against Union Pacific in the 24th Judicial District Court for the Parish of Jefferson. Rec. Doc. 1-1 (Petition for Damages). Starr asserted that as McIlhenny's subrogee, it is entitled to cover from Union Pacific the $123,199.85 Starr paid to McIlhenny for the damaged cargo. *Id.* On or about August 27, 2021, Union Pacific removed the case to this Court. Rec. Doc. 1 (Notice of Removal).

Thereafter, on September 27, 2021, Union Pacific filed the instant motion to transfer venue, alleging that Starr is bound by a contract that contains a mandatory forum selection clause. Rec. Doc. 7. According to Union Pacific, Starr's claim for damages

2

should have been filed in the United States district court for the District of Nebraska. *Id.* Because Starr did not file in the appropriate jurisdiction, Union Pacific alleges this Court must transfer venue. *Id.* On October 19, 2021, Starr timely filed a memorandum in opposition to the defendant's motion to transfer venue. Rec. Doc. 9. According to the plaintiff, neither it nor McIlhenny were privy to the contract with Union Pacific. *Id.* Instead, Starr and McIlhenny assume that Union Pacific contracted with the freight forwarder. *Id.* Because neither Starr nor McIlhenny were parties to the contract, the plaintiff asserts the mandatory forum selection clause is not binding. *Id.*

## II. LAW AND ANALYSIS

### A. Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1404(a), Union Pacific seeks to transfer this case to the United States District Court for the District of Nebraska in accordance with a forum-selection clause in the alleged Confidential Rail Transportation Contract UP-C-56920 between McIlhenny and Union Pacific. A party seeking to enforce a forum selection clause has the burden of establishing that the clause (1) is valid, (2) has a scope that covers the claims, and (3) is mandatory. *Granoff as Tr. of Granoff Acquisition Tr. v. Buoyance, Inc.*, No. CV 20-1909, 2020 WL 7495553, at *3 (E.D. La. Dec. 21, 2020). When evaluating a motion to transfer venue, the Court must first determine whether a contractually valid forum-

selection clause exists that applies to the present case. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 134 S. Ct. 568, 581 (2013); *Stinger v. Chase Bank, USA, NA*, 265 Fed.Appx. 224, 226–27 (5th Cir.2008) (per curiam); *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed.Appx. 612, 616 (5th Cir.2007) (per curiam). If such a forum-selection clause exists, the Court must then determine whether any extraordinary circumstances unrelated to the convenience of the parties exist that warrant denial of transfer. *Atl. Marine Constr. Co.*, 134 S.Ct. at 575, 581; *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766-67(5th Cir. 2016) (noting that the plaintiff bears the burden of establishing that transfer is unreasonable when a valid and enforceable forum selection clause exists and applies to a case.)[1] If no such extraordinary circumstances exist, the court should grant the motion to transfer in accordance with the forum-selection clause. *Id.*; *Smith v. Swift Transp. Co. of Arizona*, LLC, 915 F. Supp. 2d 766 (W.D. La. 2013) (noting that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."); *Granoff as Tr. of Granoff Acquisition Tr. v.*

---

[1] When determining whether extraordinary circumstances exist that warrant denial of transfer, only the public-interest factors of a traditional § 1404(a) analysis may be considered; the private-interest factors of a traditional § 1404(a) analysis, which involve the private interests of the parties and their witnesses, may not be considered. See Atl. Marine Constr. Co., 134 S.Ct. at 581-82; Weber, 811 F.3d at 766-67. These public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir.2004).

*Buoyance, Inc.*, No. CV 20-1909, 2020 WL 7495553 (E.D. La. Dec. 21, 2020) (noting mandatory forum selection clauses should be enforced unless the non-movant establishes that the clause is (1) unenforceable, or (2) should not be enforced after consideration of the public-interest factors.).

### B. Existence of a Contractually Valid Forum Selection Clause

First, this Court must determine whether a contractually valid forum selection clause exists and applies to the present case. *See Atl. Marine Constr. Co.*, 134 S.Ct. at 581 n. 5; *Stinger*, 265 Fed.Appx. at 226–27; *Braspetro Oil Servs.*, 240 Fed.Appx. at 616. Such a determination requires two separate inquiries: (1) whether the parties agreed to a contractually valid forum-selection clause, and (2) whether the present case falls within the scope of the forum-selection clause. *See Atl. Marine Constr. Co.*, 134 S.Ct. at 581 n. 5; *Stinger*, 265 Fed.Appx. at 226–27; *Braspetro Oil Servs.*, 240 Fed.Appx. at 616. The Court "should apply ordinary state-law principles that govern the formation of contracts." *See Stinger*, 265 Fed.Appx. at 227 (internal quotation marks omitted).

### i. Whether the Parties Agreed to a Contractually Valid Forum Selection Clause

"It is well settled that only a party to a contract can be bound by its provisions." *O'Hara v. Globus Med., Inc.*, 2014-1436 (La. App. 1 Cir. 8/12/15), 181 So. 3d 69, *writ denied*, 2015-1944

(La. 11/30/15), 182 So. 3d 939; *Farmers State Bank & Trust Co. v. Leger*, 503 So. 2d 1141, 1143 (La. App. 3rd Cir. 1987); La. Civ. Code art. 1983 ("Contracts have the effect of law for the parties...."). Therefore, it goes without saying that nonparties to a contract are not bound by a forum selection clause referenced therein. *See e.g.*, *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 652 (5th Cir. 2004) (holding that the plaintiff was not bound by the forum selection clause in a UMS policy because he was not a party to the UMS contract.); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("a contract cannot bind a nonparty.").

Union Pacific contends that as the insurer of McIlhenny, Starr is also bound by the contract's provisions, restrictions, and limitations, including the forum selection clause. Rec. Doc. 7. As the party seeking to enforce the forum selection clause, Union Pacific has the burden of proving that the clause is valid. *See Granoff*, 2020 WL 7495553, at *3. After review, this Court finds that the defendant has not met his burden of proving the clause is valid. The only evidence the defendant tenders for its contention that the contract binds Starr is a heavily redacted freight bill and an excerpt of the Confidential Rail Transportation contract at issue. Rec. Docs. 7-2, 7-3. However, both documents fail to identify who the shipper is or what party signed the contract with Union Pacific. More importantly, the defendant made a point to

6

redact the shipper's name on both the freight bill and the contract itself. This unknown entity is the shipper; and therefore, the proper party with whom Union Pacific contracted. If this entity had been McIlhenny, the defendant likely would not have redacted this information because it would have been direct evidence that McIlhenny agreed to the contract and thus is bound by the forum selection clause.

Moreover, Starr asserts that neither it nor McIlhenny was party to the Confidential Rail Transportation contract. Rec. Doc. 9. Instead, Starr contends that McIlhenny contacted a freight forwarder to arrange for the shipment of its cargo. Given that defendant has failed to provide evidence to support the notion that the contract binds Starr, it is clear that plaintiff did not agree to be bound by the contract. Instead, the proper parties to the contract are Union Pacific and the undisclosed freight forwarder. Defendant Union Pacific's unilateral heavy redactions are highly suspect.

### ii. Whether Starr is Bound by the Contract Between Union Pacific and the Freight Forwarder

Given that Starr is not a party to the contract, the only other way the agreement may bind the plaintiff is if the freight forwarder acted as Starr's agent. *See Constructores Tecnicos, S. de R.L. v. Sea-Land Serv., Inc.*, 945 F.2d 841 (5th Cir. 1991)(finding that the freight forwarder could not bind the shipper

7

to any contract other than one the shipper expressly consented to because the freight forwarder was not the shipper's agent.); *Strachan Shipping Co. v. Dresser Indus., Inc.*, 701 F.2d 483 (5th Cir. 1983). Depending on the facts of a given case, a freight forwarder may act as either an agent for the shipper or carrier or as an independent contractor. *See Strachan Shipping Co.*, 701 F.2d at 488; *James N. Kirby, Pty Ltd. v. Norfolk S. Ry. Co.*, 300 F.3d 1300 (11th Cir. 2002), *rev'd sub nom. Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004)(discussing the contractual implications when a freight forwarder acts as an agent versus an independent contractor); Thomas Schoenbaum, *Admiralty & Maritime Law*, Freight forwarders, agents, brokers, and non-vessel operating common carriers (NVOCC), 1 Admiralty & Mar. Law § 10:7 (6th ed.).

A freight forwarder acts as an agent when its role is merely to facilitate a contract between the cargo owner/shipper and the carrier. *Kirby*, 300 F.3d at 1305-06. In this scenario, the cargo owner pays the ocean carrier, not the freight forwarder, and the carrier issues a bill of lading directly to the cargo owner, who is listed as the shipper on the bill. *Id.* By contrast, when a freight forwarder takes on the role of the carrier, it is acting as an independent contractor. *Id.* In that scenario, the freight forwarder issues a bill to the cargo owner and lists the cargo owner as the shipper and itself as the carrier. *Id.* The cargo

8

owner is then responsible for paying the freight forwarder, not the carrier. *Id.* The freight forwarder then **subcontracts** out to a carrier, and the carrier issues the forwarder a second bill of lading that lists the forwarder as the shipper. *Kirby*, 300 F.3d at 1305-06. In deciding the agency question, the leading case in this Circuit notes that a determining factor is whether the shipper controlled the forwarder's performance of its duties. *See Strachan Shipping Co.,* 701 F.2d at 488.

In *Constructores Tecnicos, S. de R.L. v. Sea-Land Serv., Inc.*, the plaintiff hired a freight forwarder, Golden Eagle, to arrange for the carriage of a truck and some other equipment from Oklahoma to Honduras. 945 F.2d 841 (5th Cir. 1991). Golden Eagle arranged for Sea-Land to carry the cargo, and Sea-Land issued a clean bill of lading for the cargo. *Id.* at 842. However, the cargo was carried on deck. *Id.* at 842-43. The plaintiff contended that as the bill of lading was clean, there was a presumption that the cargo was to be carried under deck. *Id.* at 843.

The Fifth Circuit determined that the critical issue was whether the freight forwarder was the shipper's agent with respect to agreeing to improper on-deck stowage of the cargo or whether this was beyond the realm of its authority as an agent. *Id.* at 846. The court noted that "[t]he law in this circuit indicates that the question whether a freight forwarder acts as an agent for either party to the contract of carriage tends to turn on the facts

9

of the particular transaction under scrutiny." *Constructores Tecnicos, S. de R.L.*, 945 F.2d at 846. Ultimately, the Fifth Circuit held that Golden Eagle acted as an independent contractor rather than the plaintiff's agent. *Id.* at 848. The court reasoned that there was an absence of control by the plaintiff over Golden Eagle's performance. *Id.* Therefore, it was "impossible to conclude that Golden Eagle could bind [the plaintiff] to any contract other than one to which [the plaintiff] expressly consented." *Id.*

According to the plaintiff, McIlhenny never contracted with Union Pacific and never saw the documents Union Pacific attached to its motion. Instead, McIlhenny contacted a freight forwarder to handle the shipment. The freight forwarder did not act as McIlhenny's agent given that McIlhenny did not exercise control over the freight forwarder's selection of Union Pacific. *See Strachan Shipping Co. v. Dresser Indus., Inc.*, 701 F.2d 483 (5th Cir. 1983) (holding the freight forwarder was not the cargo owner's agent because the forwarder was free from control to select the carrier and line on which to ship the goods.) This is clear given McIlhenny was utterly unaware of the contract with Union Pacific and its assumption that the freight forwarder is the "Shipper" or "customer" referenced in the Union Pacific contract. *See* Rec. Doc. 9.

Assuming *arguendo*, the freight forwarder had been acting as the plaintiff's agent, the plaintiff would have directed the

10

freight forwarder to contract with Union Pacific and would have rendered payment directly to the defendant. However, that is not the case here as the plaintiff was unaware of the contract. Union Pacific also would have issued a bill of lading directly to McIlhenny, listing McIlhenny as the shipper. However, that likewise did not occur in this case given McIlhenny's contentions that it only communicated with the freight forwarder, never signed or received a contract from Union Pacific, and Union Pacific failed to disclose the shipper of record on the bill of freight.

Plaintiff had no relevant knowledge of how the freight forwarder performed its duties and did not control the forwarder's selection of Union Pacific as the cargo carrier. Because the freight forwarder was not acting as McIlhenny's agent, the plaintiff is not bound by the contract entered between Union Pacific and the freight forwarder. Thus, given there is no contractually valid forum selection clause between the parties, there is no need for this Court to address the second prong of whether the present case falls within the scope of the forum-selection clause.

New Orleans, Louisiana this 7th day of December, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE